In the Matter of the Application of FREDERICK J. BAUMANN, Appellant.

MARY G. FLORANCE, as Committee of WILLIAM C. FLORANCE, an Incompetent Person, Respondent.

Third Department, November 16, 1943.

*Hinman, Howard & Kattell,* attorneys (*Charles F. Fish* of counsel), for appellant.

*Roy C. McHenry,* attorney for respondent.

BLISS, J. In 1937 William C. Florance and Mary G., his wife, agreed to sell to Pio Paolucci and Domenica Paolucci, his wife, certain premises in the city of Binghamton for the sum of $2,200. The original contract was drawn by John Marcy, Jr., an attorney, and was enclosed in one of his legal covers. In 1939 the purchase price had been paid down to $1,100. By that time Florance had been declared an incompetent and Mrs. Florance was appointed his committee. Her attorney in this proceeding was Roy C. McHenry. A $300 mortgage was then held on the property by Mrs. Baumann, wife of the petitioner.

The Paoluccis decided to pay up the balance of the purchase price of the premises and obtain their deed from the incompetent and his wife. Paolucci and Marcy, the attorney, went to petitioner Baumann and arranged a loan by which Baumann was to take a mortgage on the property for $1,100. This money was to be distributed as follows: $303 for principal and interest in satisfaction of Mrs. Baumann's mortgage, $22 was Baumann's " loaning fee of two per cent on the mortgage " (whatever that may mean) and $775 to Mrs. Florance as committee for her husband. Marcy conducted a proceeding in the County Court for the sale of the interest of the incompetent and in this proceeding he appeared as attorney for petitioner Mary G. Florance as committee. An order was obtained directing the committee to execute and deliver to Pio and Domenica Paolucci a warranty deed of said premises " upon receiving full consideration for the premises therein described." Paolucci and Marcy then went to see Mrs. Florance and she signed the deed, which Marcy apparently took. On August 16, 1941, Baumann drew a check for the incompetent's share of the purchase price, namely, $775 to the order of John Marcy, Jr., attorney, and delivered the check to Marcy who immediately indorsed it and collected the proceeds. Some time later when Mrs. Florance, who had not received her money from Marcy, tried to get in touch with him but was unable to, she went to Baumann who told her he had paid the money to Marcy. Then Marcy died. Baumann searched among his papers to find out whether Marcy had cashed the check. Believing he had not done so, on November 13, 1931, Baumann gave a check to Mrs. Florance for the $775. Indorsed on the check was the following:

" No. D 3646

F. J. BAUMANN

Real Estate and Insurance

This Check is in Full for Following This check is given in place of a check which I issued to John Marcy Jr, Atty — #D3327 dated 8–16–1941 for like amount and which has become misplaced or lost and which there is a stop payment order against cashing "

Mrs. Florance cashed this second check and holds the proceeds as committee for her husband. Later Baumann's clerks found among his canceled checks the one which Baumann had given to Marcy for the same amount and which Marcy had cashed. Now Baumann brings this proceeding in the County Court against the incompetent for a refund of the second payment. The County Court denied the application.

There is a familiar rule of law that a mutual mistake as to a material fact will avoid a contract regardless of the negligence of either party (*Ball* v. *Shepard,* 202 N. Y. 247; *Hathaway* v. *County of Delaware,* 185 N. Y. 368) unless a change in position renders it unjust. Thus if there had been an actual first payment to the committee or some one duly authorized to receive for her, and a second payment was made under a mistaken belief that the first payment had not actually been made, the second payment could be recovered even though the payor was negligent. However, that rule does not apply to this case.

In these transactions Marcy acted for the Paoluccis and Baumann as well as for Mrs. Florance. He arranged the loan from Baumann to Paolucci. He prepared the deed, satisfaction of the Baumann mortgage, new bond and mortgage from Paolucci to Baumann, looked after the title and also conducted the proceeding for the sale of the incompetent's interest. Baumann, properly speaking, should have made his payment to the Paoluccis because he was loaning the money to them. He received a bond and mortgage from Mr. and Mrs. Paolucci and in return loaned them $1,100 of which the $775 was a part. Thus when the check was drawn to John Marcy, Jr., attorney, it meant attorney for the Paoluccis or even attorney for Baumann himself as much as it did attorney for Mrs. Florance. The fact that the check was the exact amount due the incompetent does not change this situation.

In order to avoid a payment, a mutual mistake must be as to a material fact and an essential element of the transaction. Here there was no transaction between Baumann and the incompetent. The payment to Marcy was not material to any agreement between these parties and did not constitute the essence of any contract between the Florances and Baumann.

Our statutes carefully protect an incompetent person and his property. Such person is a ward of the court, which must preserve his property from waste or destruction and out of the proceeds provide for the payment of his debts. (Civ. Prac. Act, §§ 1356, 1357.) This jurisdiction of the court must be exercised through a committee of the property. (Civ. Prac. Act, § 1358.) Such committee is subject to the direction and control of the court and cannot dispose of the incompetent's real property without the special direction of the court obtained upon proceedings taken for that purpose as prescribed in the Civil Practice Act. (§ 1377.) Such direction may be obtained when a valid contract for the sale of the real property has been made, but

a conveyance thereof cannot be made by reason of the incompetency. (Civ. Prac. Act, §§ 1385, 1388.) Upon the application to sell, the committee must give security for the faithful discharge of his trust and account for all moneys received by him. (Civ. Prac. Act, § 1393.) It is the court that orders the delivery of the deed. (Cf. § 1399.) Under section 1403 of the Civil Practice Act, the court must by order direct the disposition of the proceeds of the sale. Both the giving of the conveyance and the disposition of the moneys must be reported to the court under oath and confirmed. I have cited the statutory provisions with such particularity to show that the attorney for the committee of the incompetent was not authorized to accept payment of the balance of the purchase price of the premises. Not even the committee could accept it until ordered to do so by the court and after giving adequate security. It must also necessarily follow that the committee could not ratify the attorney's act in accepting the money. Payment to the attorney by the mortgagee was at his peril. It could properly be made only to the committee. Nor could the sale be confirmed by the court until payment of the purchase price was actually received by the committee.

The order should be affirmed.

All concur.

Order affirmed, with twenty-five dollars costs and disbursements.